**Marc B. KAPLIN, Appellant**

v.

**LOWER MERION TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2011.

Decided May 5, 2011.

George W. Broseman, Blue Bell, for appellant.

Gilbert P. High, Jr., Norristown, for appellee.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge COHN JUBELIRER.

Marc B. Kaplin (Requester) appeals from the Order of the Court of Common Pleas of Montgomery County (trial court), which held that the Township of Lower Merion (Township) properly withheld documents requested by Requester under the Right to Know Law (RTKL)[1] pursuant to Section 708(b)(10)(i), 65 P.S. § 67.708(b)(10)(i), which exempts from disclosure records documenting internal predecisional deliberations. Requester argues that the trial court did not construe the RTKL liberally, that the records sought were not deliberative, and that the records were not internal.

Requester represents Righters Ferry Associates, L.P. (RFA), which wishes to build a development (Development) comprising approximately 600 apartment units in the Township. To that end, RFA filed a Conditional Use Application (Application) with the Township Board of Commissioners (Board).

On November 16, 2009, after hearings had been completed on the Application, but before the Board issued its decision, Requester filed a request under the RTKL with the Township seeking:

1. Any and all electronic (whether on Township, personal and/or other devices) or written correspondence/communications by, to, from, between and/or among [Board] member(s) George Manos, Paul McElhaney and/or Elizabeth Rogan related to (i) the property at 600 Righters Ferry Road also known as Montgomery County Tax Parcel No. 40–00–49752–00–5 and the former Georgia-Pacific Property, (ii) the adjoining properties at 601–615 Righters Ferry Road owned by Bridgehead LP also known as Montgomery County Tax Parcel No. 40–

00–49752–01–4 and Footbridge LP also known as Montgomery County Tax Parcel No. 40–00–49716–00–5; (iii) the pending Conditional Use application by Righters Ferry Associates, L.P., (iv) recreational trail(s) existing and/or proposed along or in proximity to the Schuylkill River and/or (v) the Pencoyd Bridge.

2. Any and all electronic (whether on Township, personal and/or other devices) or written correspondence/communications by, to, from between and/or among Robert Duncan and/or Christopher Leswing related to [the five items enumerated in the first paragraph].

3. Any and all electronic (whether on Township, personal and/or other devices) or written correspondence/communications between or among [Board] member(s) and Inga Saffron related to [the five items enumerated in the first paragraph].

(Public Record Review/Duplication Request at 3, November 16, 2009 (First Request), R.R. at 10a.) Requester sought records for the period from January 8, 2008, to the time of the Request. (First Request at 3, R.R. at 10a.) On December 17, 2009, after requesting an extension as permitted by the RTKL, the Township's Public Information Officer, Brenda J. Viola (Viola), stated that the Township Solicitor had reviewed 1,215 pages of documentation in response to the Request, found that 1,097 were covered by the Request, but that: 322 pages were exempt under Section 708(b)(10)(i) because they reflected internal predecisional deliberations; 101 pages were exempt due to attorney-client privilege; and 89 pages were exempt under Section 708(b)(9) of the RTKL because they constituted drafts of an amendment to the Township's zoning ordinance. Viola,

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101—67.3104.

in the Township's response, stated that approximately 575 pages of documents were disclosable.

On January 7, 2010, Requester appealed the Township's response (First Response) to the Office of Open Records (OOR), arguing that, under the definition of "deliberation" in the Sunshine Act,[2] none of the documents requested could have been deliberative because, under Section 913.2(b)(1) of the Pennsylvania Municipalities Planning Code (MPC),[3] the period for deliberation on the Application could not have started until December 9, 2009, after the date of the Request. Similarly, Requester argued that, under the Sunshine Act, a quorum of the members of the agency are required to deliberate, and therefore, any communications between less than a quorum of the Board members could not be deliberative. With regard to the documents exempted as subject to attorney-client privilege, Requester argued that the Township failed to show that the elements existed for the privilege to apply.

In a Final Determination dated February 5, 2010 (First Final Determination), the OOR granted Requester's appeal in part and denied it in part. In determining whether the records the Township withheld under Section 708(b)(10)(i) were subject to that exemption, the OOR applied the following test:

> an agency must show the communication is: (1) *internal* to the agency, including representatives, (2) *predecisional,* meaning it was made before a decision was made; and (3) *deliberative in character* in that it makes recommendations or expresses opinions on legal or policy

matters and is not purely factual in nature.

(First Final Determination at 4, R.R. at 41a (emphasis in original).) The OOR specifically rejected Requester's argument that the Sunshine Act's definition of the term "deliberations" should be applied to Section 708(b)(10)(i). The OOR also determined that members of an agency staff as well as the agency's governing body could be included in exempt deliberations. However, the OOR determined that the Township failed to sufficiently show that documents withheld from June 11, 2008, forward, dealing with the Application, were deliberative; therefore, the OOR held that the Township must disclose these documents. With regard to the documents the Township argued were covered by attorney-client privilege, the OOR held that the Township had failed to submit sufficient evidence that all the emails between the Township and its special counsel[4] fell within the ambit of attorney-client confidentiality. Requester and Township each appealed the First Final Determination to the trial court.

On December 21, 2009, Requester submitted a second RTKL request to the Township (Second Request) seeking substantially the same materials as the First Request, but for the time period spanning November 17, 2009, through December 9, 2009.[5] (Second Request at 3, R.R. at 145a.) By response dated January 21, 2010 (Second Response), the Township stated that it had found 122 pages of documentation responsive to the Second Request, but that 9 pages were exempt under

---

2. 65 Pa.C.S. §§ 701—716.

3. Act of July 31, 1968, P.L. 805, *as amended,* added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10913.2(b)(1).

4. The Township retained special counsel to represent the Township staff who were opposing the Application on behalf of the Township.

5. December 9, 2009 was the date by which the Board was required to issue a decision on RFA's Application.

Section 708(b)(10)(i) as being deliberative communications between Board members and/or Township staff regarding the Application and that another 31 pages were subject to attorney-client privilege because they were either communications between Township staff and the Township's special counsel or between the Township Solicitor and Township staff. Requester appealed to the OOR raising similar issues as in his first appeal. Requester also argued that any communication between Township staff and the Township Solicitor could not be subject to attorney-client privilege because, with respect to the Application, the Board, not the Township, was the Township Solicitor's client, and that the Township staff were appearing in a party capacity before the Board.

In a Final Determination dated March 26, 2010, the OOR held that, because the Township staff was appearing before the Board in a party capacity on the Application, the Board and the Township staff were not the same entity, and therefore, communications between them were not internal for purposes of determining whether the communications documented an internal predecisional deliberative process. The OOR held that 11 pages of emails between Township Staff and the Township's special counsel were subject to the attorney-client privilege and, therefore, did not need to be disclosed. The OOR held that the privilege also applied to 19 pages of emails between the Board and the Township Solicitor, but that the Board waived this privilege by disclosing these emails to Viola, who was responsible for responding to the Second Request. Therefore, the OOR held that these emails were disclosable. The OOR also held that emails between the Township Solicitor and Township staff regarding the timing of deliberations were not subject to the attor-

ney-client privilege because Township staff were not the client of the Township Solicitor for purposes of the Application. (Final Determination at 6–8, R.R. at 180a–82a.) The Township appealed the OOR's determination to the trial court.

With regard to the First Request, the trial court held that the exception at Section 708(b)(10)(i) included discussions between Township administrative staff and Board members. In doing so, the trial court rejected Requester's argument that in order to be deliberative for purposes of Section 708(b)(10)(i), communications must qualify as deliberations under the Sunshine Act. The trial court agreed with Requester that two pages of emails from the Township Solicitor to the Township's special counsel were not privileged under the attorney-client privilege because the Township Solicitor was advising the Board in its consideration of the Application while the special counsel was representing Township staff, who were opposing the Application on behalf of the Township.

With regard to the Second Request, the trial court held that the attorney-client privilege between the Board and the Township Solicitor was not waived by disclosure of those records to the Township employee acting as the Township's open records officer. The trial court held that the nine pages of emails between the Board and Township staff were subject to the predecisional deliberation exception because even though some Township staff and the Board were separate parties for purposes of adjudication of the Application, the communications were still internal to the Township. The trial court based its decision on both the First and Second Requests in part on an *in camera* review of the documents in question. Requester now appeals to this Court.[6]

6. Our scope of review from a decision of a      trial court in a case under the RTKL is "limit-

Before this Court, Requester argues that the trial court erred in holding that: (1) communications between Board members can be subject to the exception at Section 708(b)(10)(i) when they occurred before the period for deliberation on the Application as set out in the MPC; and (2) communications between Board members and Township staff could fall within the exception at Section 708(b)(10)(i) when those communications were impermissible ex parte communications in the Application proceedings, and when those communications exhibit a commingling of the Township's adjudicatory and prosecutorial functions with regard to the Application.

■ We first address Requester's argument that the trial court erred in holding that communications between Board members can be subject to the exception at Section 708(b)(10)(i) when they occurred before the period for deliberation on the Application as set out in the MPC. Section 708(b)(10)(i) exempts from disclosure:

(10)(i) A record that reflects:

(A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

(B) The strategy to be used to develop or achieve the successful adoption of a budget, legislative proposal or regulation.

65 P.S. § 67.708(b)(10)(i). According to the language of Section 708(b)(10)(i), protected records must be predecisional and deliberative. Requester argues that under Section 913.2(b)(1) of the MPC, 53 P.S. § 10913.2(b)(1), the Board had a 45–day period after the close of hearings to deliberate on the Application. Hearings on the Application did not conclude until December 9, 2009. Therefore, Requester argues that no records created before December 9, 2009, could reflect deliberations by the Board because the Board was not permitted by the MPC to deliberate on the Application before that time.

We disagree that Section 913.2(b)(1) of the MPC forbids the Board from engaging in deliberative communications prior to the close of hearings. Section 913.2(b)(1) provides that a governing body must make a decision on a conditional use application within 45 days of the end of hearings on the application. 53 P.S. § 10913.2(b)(1). Section 913.2(b)(1) does not specify whether a governing body may communicate regarding the merits of the application prior to the close of hearings. Requester argues that *Wistuk v. Lower Mount Bethel Township Zoning Hearing Board,* 592 Pa. 419, 925 A.2d 768 (2007), stands for the principle that hearings and deliberations are discrete processes under the MPC and that zoning board members are thus akin to jurors and must not discuss evidence or the merits of an application prior to the close of a hearing. *Wistuk* does not stand for this principle. In *Wistuk,* the Supreme Court held that a meeting for purposes of deliberation and discussion did not qualify as a hearing to toll the 45–day period set

ed to determining whether findings of fact are supported by competent evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision." *Allegheny County Department of Ad-* *ministrative Services v. A Second Chance, Inc.,* 13 A.3d 1025, 1029 n. 3 (Pa.Cmwlth.2011) (en banc) (quoting *Piasecki v. Department of Transportation, Bureau of Driver Licensing,* 6 A.3d 1067, 1070 n. 7 (Pa.Cmwlth.2010)).

out in Section 913.2(b)(1). *Wistuk*, 592 Pa. at 430–31, 925 A.2d at 774–75. This holding does not support Requester's argument that Board members may not consider or discuss the evidence in, or merits of, a proceeding on a conditional use application prior to the close of hearings.[7] Moreover, even if the law did support such a principle, this would not serve to transform deliberative, albeit impermissible under that interpretation, communications into non-deliberative communications. We, therefore, hold that the trial court did not err on this issue.

■ We next address Requester's argument that the trial court erred in holding that communications between Board members and Township staff could fall within the exception at Section 708(b)(10)(i) when those communications were impermissible ex parte communications in the Application proceedings, and when those communications exhibit a commingling of the Township's adjudicatory and prosecutorial functions with regard to the Application. Essentially Requester argues that because Township staff appeared before the Board as a party opposing the approval of the Application, any discussion between the Board and Township staff could not have been "internal" for purposes of Section 708(b)(10)(i) and the predecisional deliberation privilege described in *Commonwealth v. Vartan*, 557 Pa. 390, 733 A.2d 1258 (1999). Requester argues that, per *Vartan*, communications must be internal to the agency seeking the privilege, as well as predecisional and deliberative in nature. In addition, Requester argues that Section 908(8) of the MPC, 53 P.S. § 10908(8), prohibits the Board from communicating with a party or its representatives while considering a conditional use application.

With regard to the documents at issue, Viola stated in her affidavit:

> I have been provided with and have withheld 11 pages of documents exchanged between members of the Township Staff and Mr. Pritchard [special counsel for the Township] in conjunction with his representation. These communications are confidential in that they exchange information related to the substance of testimony to be presented by one witness. The balance of the documents are an exchange of email between Mr. Pritchard and members of the Township staff containing advice, asking questions and providing information regarding the assemblage, storage, protection, exchange and transmission of exhibits to be used by Mr. Pritchard and his witness in the presentation of testimony to the [Board].

(Viola Affidavit ¶ 7.) As discussed above, the Township also withheld 9 pages of documents containing communications between Township staff and Board members regarding the administrative logistics of issuing a decision on the Application. It is unclear from the record whether the Township staff who communicated with the Board include individuals who also communicated with Mr. Pritchard regarding the presentation of the Township's argument against the Application.

■ However, we agree with Township that the current case involves the right to disclosure under the RTKL, not possible due process violations under the MPC. Requester's remedy for due process violations in its land use hearing or violations of the MPC would be to appeal the Board's adverse decision and seek discovery, *Stein v. Plymouth Township*, 994 A.2d 1179, 1183 (Pa.Cmwlth.2010) (holding that although a requester might have the right

---

**7.** It should be noted that at most only two or three of the Board members participated in

any given communication, far less than a quorum of the 14–member Board.

under the MPC to confront a witness who filed a complaint against his property, the document was still exempt from disclosure under the RTKL), which, in fact, Requester has done.

Moreover, contrary to Requester's reliance on *Vartan*, which was not applying the provisions of the current RTKL, but had to do with the enforcement of an administrative subpoena, a communication does not necessarily need to be internal to a single agency to be covered by the predecisional deliberation protection of Section 708(b)(10)(i). This Section provides that the exemption covers "[t]he internal, predecisional deliberations of an agency, its members, employees or officials *or* predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including . . . memos or other documents used in the predecisional deliberations." 65 P.S. § 67.708(b)(10)(i) (emphasis added). We believe that, even if there was a violation of the separation of powers within the Township staff, the staff's advice to the Board regarding the logistics of issuing a decision is still an internal, pre-decisional communication. However, as shown by the above statutory language, even if the alleged separation of powers problem required the Township staff to be considered as a separate agency from the Board, the communication could be considered to be predecisional deliberations between agency members and employees of another agency. Requester's clients' remedy for any violation of due process would then be through their direct appeal of the adverse decision on the Application.

For these reasons, we affirm the Order of the trial court.

### ORDER

**NOW,** May 5, 2011, the Order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby **AFFIRMED.**